19076

Carolyn G. HOWARD, Appellant, v. Donald L. ALLEN, Respondent

(176 S. E. (2d) 127)

*Messrs. Carlisle Bean & Hines,* and *Meredith J. Hayes,* of Spartanburg, *for Appellant,*

*Messrs. Holcombe, Bomar & Cureton,* of Spartanburg, *for Respondent,*

July 9, 1970.

Bussey, Justice:

In this action the plaintiff-appellant seeks to recover damages for personal injuries allegedly sustained when plaintiff was struck by the propeller of an aircraft, while upon the ground, at Greenville Municipal Airport. The defendant-respondent, alleged to be the operator of the aircraft, is a resident of Columbus, Ohio.

Being unable to obtain personal service of process upon the defendant in South Carolina, the plaintiff caused to be issued a summons, complaint and warrant of attachment directing the Sheriff of Spartanburg County to attach and seize "the applicable limits of liability and the duty to defend contained in Policy No. NM6-625, issued by American Motorists Insurance Company, or so much of the property of Donald L. Allen as will make the sum of Three Hundred Thousand and No/100 Dollars." Such process, including the warrant of attachment, was duly served in Spartanburg County upon one J. C. Brodie, an agent of American Motorists Insurance Company.

The defendant appeared specially for the sole purpose of objecting to the jurisdiction of the court, and moved to

quash service of the summons and for vacation of the warrant of attachment. In support of such motion affidavits were filed to the effect that defendant was a lifelong resident of Ohio, never owned any property in South Carolina, and never had any contact with the said J. C. Brodie. The motion to quash and vacate was granted by the lower court and the plaintiff appeals, stating the sole question for decision by this court as follows:

"Does the duty to defend and the limit of liability contained in a policy of liability insurance constitute a 'debt' owed the policyholder which is subject to attachment, thereby conferring jurisdiction upon the Courts of this State?"

If the aforesaid contractual obligations of defendant's liability insurer constitute or amount to a "debt" owed the defendant by his insurer, it would seem clear that such are subject to attachment. It is settled by our prior decisions that a debt is property subject to attachment in this state. *Charles R. Allen, Inc. v. Rhode Island Insurance Company*, 217 S. C. 296, 60 S. E. (2d) 609; *Williamson v. Eastern Building and Loan Assoc.*, 54 S. C. 582, 32 S. E. 765; *Charles R. Allen, Inc. v. Island Co-op Services Co-op Ass'n Ltd.*, 234 S. C. 537, 109 S. E. (2d) 446.

Plaintiff concedes that there is no South Carolina decision in point with the instant case and, in support of her contention that these contractual obligations constitute a debt subject to attachment, relies solely on the decision of the Court of Appeals of New York in *Seider v. Roth*, 17 N. Y. (2d) 111, 269 N. Y. S. (2d) 99, 216 N. E. (2d) 312, which decision was subsequently followed by the New York Court in the cases of *Simpson v. Loehmann*, 21 N. Y. (2d) 305, 287 N. Y. S. (2d) 633, 234 N. E. (2d) 669, and *Victor v. Lyon Associates, Inc. et al.*, 21 N. Y. (2d) 695, 287 N. Y. S. (2d) 424, 234 N. E. (2d) 459. In *Seider* the injury complained of occurred in Vermont, the plaintiff was a resident of New York, and the defendant was a resident of Canada, but his insurance carrier did business in

New York. By a 4-3 decision, the New York Court, against a strong dissent, decided that the contractual obligations of the defendant's liability insurance carrier constituted a "debt" *under the law of New York*, subject to attachment. There are, we think, some important distinctions between the language of the New York attachment statutes and our attachment statutes, but aside therefrom, we are not convinced of the soundness of the majority opinion in *Seider*.

Apparently no state has followed the New York Court in this respect and it appears from the order of the lower court and the brief of the respondent, without contradiction by the appellant, that the decision in *Seider* has been much criticized by legal writers on both constitutional and practical grounds. Cited as critical of the *Seider* rule are the following articles, which we have not had the time and opportunity to fully review. Attachment of Liability Insurance Policies, 53 Cornell Law Rev. 1108 (1968); *Quasi in Rem* Jurisdiction Based on Insurer's Obligation, 19 Stan. L. Rev. 654 (1967); Reese, The Expanding Scope of Jurisdiction over Non-Residents—New York Goes Wild, 35 Ins. Counsel J. 118 (1968); Attachment of "Obligations"—A New Chapter in Long Arm Jurisdiction, 16 Buffalo L. Rev. 769 (1967); Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation, 67 Colum. L. Rev. 550 (1967).

Several courts in other jurisdictions have reached results or conclusions contrary to *Seider*. See *Housley v. Anaconda Company,* 19 Utah (2d) 124, 427 P. (2d) 390 (1967); *De Rentiis v. Lewis,* 258 A. (2d) 464 (R. I. 1969); *Jardine v. Donnelly,* 413 Pa. 474, 198 A. (2d) 513 (1964). We are not convinced that the contractual obligations of defendant's insurer are a debt subject to attachment under the law of this state, and a review and analysis of decisions from other states would, we think, serve no useful purpose. The insurance policy involved is not before us, but we assume, as argued by counsel without contradiction, that the policy contains the usual or standard clauses in liability policies,

including a "no action" clause, and the usual or standard duty to defend clause. The form of "no action" clause in common use provides that no action can be brought against the insurer until after the determination of the liability of the insured by a final judgment, or by an agreement entered into between the insurer, the insured and the claimant. It follows that insofar as the "applicable limits of the policy" are concerned, the insurer owes the insured nothing until the liability of the insured and the amount thereof has been determined. Even after determination of such, whether the insurer owes the insured anything is dependent upon the contingencies of whether or not the insured has complied with the various provisions of the insurance contract, and whether or not the insurer has discharged its obligation to indemnify.

In the recent case of *Park v. Safeco Ins. Co. of America,* 251 S. C. 410, 162 S. E. (2d) 709 (1968), a plaintiff brought an action against his liability carrier, which provided uninsured motorist coverage, and the carrier for a third party who allegedly caused plaintiff's damage and the action was dismissed, this court saying, *inter alia,*

"Plaintiff's alleged right to sue is at this time primarily and basically against McCall (the third party). He has no right to call upon McCall for payment of damages until he establishes liability, and accordingly, he has no right to call upon any insurance company alleged to protect McCall, nor to call upon his own insurance carrier under the uninsured motorist endorsement of his own policy until liability is fixed. Stated another way, no right to recover can accrue to plaintiff against either insurance company until and unless McCall becomes liable to pay. An injured person has no greater right against an insurer under a liability insurance policy than the insured."

Both the obligation to indemnify and the obligation to defend are inchoate, conditional, contingent obligations to the insured. Before they come into play

there must be an external event within the coverage of the policy and the performance of all conditions precedent by the insured, including his cooperation. There is no obligation to defend until an action is brought and no obligation to indemnify until a judgment against the insured is obtanied. Even then, if the insurer's obligations to defend and indemnify are fully performed, there is nothing of economic value to which the insured may make claim, receive or assign.

In the case of *Pelzer Mfg. Co. v. Pitts and Hartzog,* 76 S. C. 349, 57 S. E. 29, the court, after reviewing the various provisions of our attachment statutes, said,

"(I)t is obvious the intention was to subject to attachment process every property interest of the debtor—not only that which is legal and that capable of actual seizure, but that which is equitable, and that requiring actions either at law or in equity to make it available for the payment of the attachment debt."

The foregoing proposition is relied on by the plaintiff in support of the contention that the inchoate, contingent obligations of the insurer constituted a debt within the purview of the attachment statutes at the time of the attachment. We do not agree. To the contrary, here the policy obligations to defend and indemnify are attempted to be used as a sufficient basis for jurisdiction to start an action which might or might not, depending on various and sundry events, at some future date, convert such policy obligations into a monetary debt to the insured.

In *H. J. Baker & Bro. v. Doe,* 88 S. C. 69, 70 S. E. 431, 433, 34 L. R. A., N. S., 510, and *Charles R. Allen, Inc. v. Island Co-op Services Co-op Ass'n Ltd.,* 234 S. C. 537, 109 S. E. (2d) 446, this court quoted with approval from Drake on Attachment, Sec. 243, as follows:

" 'A fundamental principle is that an attaching creditor can acquire no greater right in attached property than defendant had at the time of the attachment. If, therefore, the property be in such a situation that the defendant has lost

his power over it, or has not yet acquired such interest in, or power over, it, as to permit him to dispose of it adversely to others, it cannot be attached as his debt'."

It is well settled in this jurisdiction that the attachment of a creditor operates only upon such rights in property as the defendant-debtor has at the time of levy and the attaching creditor cannot by attachment secure greater or higher rights in property than the defendant-debtor has. *Brown Const. Co. v. Mass. Bonding & Ins. Co.,* 176 S. C. 76, 179 S. E. 697. At the time of the levy in the instant case the insurer had not failed to perform any obligation to the insured and was, therefore, we think, not indebted to him in any amount. Until there was a failure to perform by the insurer, the insured did not have such interest in, or power over, the contractual obligations due him by the insurer as to permit him to dispose of his interest in the policy adversely to others. The provisions of the policy, insofar as they inure to the benefit of only the insured, are, prior to any breach by the insurer, of no value to anyone other than the insured. Therefore, even if he had the right or power to dispose of his interest in the policy adversely to others prior to a breach by the insurer, we cannot conceive of his being able to assign or dispose of such for a valuable consideration of any consequence.

We are not without sympathy for the plight of the plaintiff. Unfortunately for her, there is no statute whereby she might obtain personal jurisdiction of the nonresident defendant as is the case with a nonresident motorist. It may very well be that her plight and that of others similarily situated deserves the serious consideration of the General Assembly, but this court is, of course, not empowered to legislate. For the reasons hereinabove set forth, we conclude that the lower court correctly quashed the attempted service of process and vacated the attachment. The conclusions hereinabove reached render it unnecessary to discuss the additional sustaining grounds noticed and argued by the defendant-respondent.

Our determination in this case, as well as the determination by the lower court, has been otherwise than upon the merits of the complaint. The merits of the plaintiff's cause of action were not before this court and have not been considered.

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.